EL PUEBLO DE PUERTO RICO, apelado, *v.* CATALINO RODRÍGUEZ APONTE, acusado y apelante.

*Número:* O-84-833 *Resuelto:* 14 de noviembre de 1985

---

*Roberto Schmidt Monge, Procurador General, Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo; *José A. De La Texera,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Contra Catalino Rodríguez Aponte se presentaron cinco denuncias que le imputan los delitos de tentativa de asesinato e infracción a los Arts. 6 y 8 de la Ley de Armas. Para la vista preliminar su abogado solicitó la citación de once (11) testigos, diez (10) de los cuales figuraban al dorso de las denuncias como testigos de cargo. El Tribunal de Distrito accedió.

En la vista, el fiscal presentó el testimonio de cuatro (4) testigos. Fueron contrainterrogados por la defensa y se puso a su disposición copia de sus declaraciones juradas. El fiscal se reservó para el juicio en su fondo los restantes seis (6) testigos y sometió los casos.

Subsiguientemente, el abogado de Rodríguez Aponte procedió a llamar como testigo de defensa a una de las testigos de cargo no presentada por el Ministerio Público. Éste se opuso. Adujo que se trataba de una testigo de cargo. La defensa argumentó que la testigo había sido citada conforme su pedido. El fiscal replicó para indicar que desconocía la existencia de esa solicitud y orden, y que era contraria a derecho. El tribunal sostuvo "la presentación de esos testigos en el balance de la justicia".

Inconforme, el Ministerio Público presentó un recurso de *certiorari* en el Tribunal Superior, Sala de Aibonito. Le fue negado. Acudió a este foro. Concedimos al imputado Rodríguez Aponte término para que compareciera a mostrar causa por la cual no deberíamos dejar sin efecto la determinación del Tribunal de Distrito.

## II

La solución del caso está enmarcada en los propósitos de la vista preliminar, ([1]) según visualizados en la Regla 23 de Procedimiento Criminal. Sin embargo, antes de realizar ese aná-

---

([1]) En su perspectiva histórica la actual vista preliminar guarda alguna semejanza con el "Coroner's Inquest", de procedencia inglesa y cuyas raíces eran los estatutos de "Philip and Mary", de mediados del siglo 16. Nota, *The Preliminary Hearing: an Interest Analysis*, 51 Iowa L. Rev. 164 n. 4, 165 n. 7 (1965); citando a: 1 *Holdsworth, A History of English Law* 295-296 (3ra ed. 1922); 1 *Stephen, A History of Criminal Law of England* 217 (1883); *Orfield, Criminal Procedure from Arrest—to Appeal* 49, 72-75 (1947). Bajo estos estatutos la pesquisa era más bien de naturaleza inquisitorial, diseñada para "detectar y exponer a un cuidadano al cual se le presumía culpable". Stephen, *op. cit.*, págs. 221-222. Se conducía en secreto. El acusado no tenía derecho a estar representado por abogado. Con frecuencia era torturado. Se le negaba el examinar los testigos en su presencia. Cualquier información obtenida le era comunicada solamente al representante del Estado. Salvo la posibilidad de que durante el procedimiento, discrecionalmente se le fijara fianza, todo el trámite estaba diseñado para favorecer o redundaba en beneficio de la parte acusadora. Para más detalles históricos véanse: Nota, *op. cit.*; M. J. Godreau, *La Vista Preliminar*, 34 Rev. Jur. U.P.R. 77 (1965) citando a P. J. Kauper, *Judicial Examination of the Accused*, 30 Mich. L. Rev. 1224-1234.

lisis, la tesis del imputado Rodríguez Aponte exige que previamente repasemos algunos principios elementales que sirven de basamento a nuestro procedimiento penal vigente.

■ Primero, nuestra Constitución establece en la etapa del juicio el derecho de todo acusado a carearse con los testigos de cargo y obtener la comparecencia compulsoria de testigos a su favor. Sec. 11, Art. II. El juicio en su fondo es el momento realmente culminante y crítico. Allí es que se adjudica en sus méritos su culpabilidad o inocencia.

■ Segundo, el derecho a contrainterrogar y presentar prueba a su favor en una etapa anterior al juicio, como lo es la vista preliminar, necesariamente debe evaluarse contra el trasfondo de lo dispuesto en las Reglas de Procedimiento Criminal. Excepto limitadas excepciones, la norma general es la dispuesta en la Regla 95, que sólo autoriza el descubrimiento de prueba sobre "determinados objetos, libros, documentos y papeles *que no fueren declaraciones juradas,* con excepción de la declaración del propio acusado" *después* de haberse presentado la acusación. (Énfasis suplido.)

■ Tercero, la génesis de la vista preliminar es estatutaria, no constitucional. Por tal razón no es correcto ni jurídicamente apropiado —como método adjudicativo— el análisis teórico que transtermina mecánicamente los preceptos constitucionales a las Reglas de Procedimiento Criminal.

■ Cuarto, existen diferencias fundadas y legítimas en cuanto a la extensión y contenido de los derechos en el ámbito procesal. La dinámica varía en atención a las distintas etapas. Esta variante es evidente en el área del derecho de un acusado a interrogar los testigos de cargo antes y durante el juicio. Con anterioridad al juicio, el derecho del imputado a interrogar o entrevistar los testigos de cargo está circunscrito a sólo la voluntad de los testigos. *Hoyos Gómez* v. *Tribunal Superior,*

90 D.P.R. 201 (1964).([2]) Durante el juicio, ese derecho está limitado a que el fiscal los anuncie y no los presente. En estas circunstancias, de ordinario el Ministerio Público pone a disposición de la defensa los testigos así renunciados pues de lo contrario, entraría en juego la presunción de la Regla 16(5) de Evidencia preceptiva de que "toda evidencia voluntariamente suprimida resultará adversa si se ofreciere". Véase *Pueblo* v. *Campán*, 34 D.P.R. 107 (1925). Renunciado el testigo de cargo, la defensa está en libertad de entrevistarlo y puede optar por presentarlo como su testigo.

■ Quinto, aparte de estas instancias (i.e., la entrevista voluntaria *fuera de los procedimientos ante el tribunal* y la presentación del testigo de cargo renunciado *en el juicio*), no hemos reconocido ninguna otra en que a un imputado le asista el derecho absoluto de poder interrogar los testigos de cargo antes del juicio en su fondo.

Con esta perspectiva en mente concentremos en la vista preliminar. El inciso (c) de la Regla 23 reza:

> Procedimiento durante la vista. Si la persona compareciere a la vista preliminar y no renunciare a ella, el magistrado deberá oír la prueba. La vista será privada a menos que al comenzar la misma la persona solicitare que fuere pública. La persona podrá contrainterrogar los testigos en su contra y *ofrecer prueba en su favor*. El fiscal podrá estar

([2]) Allí dijimos:

"Si los testigos aquí aludidos están prestos voluntariamente a entrevistarse y conferenciar con el abogado del peticionario, no existe obstáculo para ello y puede llevarse a efecto sin necesidad de orden judicial previa. Pero tenemos que resolver que bajo nuestro estado de derecho procesal positivo al peticionario no le asiste la prerrogativa de obtener una orden mandatoria del Tribunal de instancia para que los testigos mencionados comparezcan a su Sala antes de la fecha del juicio a fin de ser entrevistados o interrogados por la defensa, y a invocar el poder coercitivo del Tribunal a tal efecto." Págs. 205–206.

El reverso de esta norma la expusimos en *Pueblo* v. *Tribunal Superior*, 99 D.P.R. 98 (1970), en que resolvimos que un fiscal carece de autoridad para citar, so pena de desacato, y tomarles declaraciones juradas a testigos anunciados por un acusado para sustanciar su defensa.

presente en la vista y podrá también interrogar y contrainterrogar a todos los testigos y ofrecer otra prueba. Al ser requerido para ello el fiscal pondrá a disposición de la persona las declaraciones juradas que tuviere en su poder de los testigos que haya puesto a declarar en la vista. Si a juicio del magistrado la prueba demostrare que existe causa probable para creer que se ha cometido un delito y que la persona lo cometió, el magistrado detendrá inmediatamente a la persona para que responda por la comisión de un delito ante la sección y sala correspondientes del Tribunal de Primera Instancia; de lo contrario exonerará a la persona y ordenará que sea puesta en libertad. El magistrado admitirá la prestación de fianza por la persona o podrá mantenerla en libertad bajo la fianza prestada al ordenar su arresto. Después de que terminare el procedimiento ante él, el magistrado remitirá inmediatamente a la secretaría de la sección y sala correspondientes del Tribunal de Primera Instancia todo el expediente relacionado con dicho procedimiento, incluyendo cualquier fianza prestada. En el expediente se hará constar la fecha y sitio de la vista preliminar, las personas que a ella comparecieron y la determinación del magistrado. (Énfasis suplido.)

En la expresión recalcada "ofrecer prueba a su favor" se apuntala el reclamo del imputado Rodríguez Aponte. Analicémoslo.

La vista preliminar no fue adoptada en Puerto Rico hasta el 1ro de julio de 1964. Sin embargo, desde finales de la década del 1950 era objeto de discusión en los foros jurídicos del país. Así, en la primera Conferencia Judicial de Puerto Rico el Comité de Procedimiento Criminal, por voz de su Presidente, Lic. Francisco Ponsa Feliú, expuso de este modo su concepción original:

La Regla adoptada, habrán visto ustedes, está fundamentalmente inspirada, o basada, más bien, en la Regla Federal. En una Regla que, como todas las disposiciones Federales de procedimiento criminal, está concebida en términos generales, en términos amplios, en términos y conceptos abarcadores, sin el más mínimo esfuerzo por puntualizar o recurrir

al detalle. *La vista preliminar*, según podemos ver de la disposición (b) de la Regla 18, y de la disposición (c) de la Regla 18, *es una en la cual el acusado tendrá derecho a estar representado por abogado, tendrá derecho a repreguntar testigos contrarios y a ofrecer testigos a su favor, y la misión del magistrado será, a base de la prueba que escuche, determinar la existencia de causa probable.* Concepto conocido por todos y cuyo contenido jurídico, naturalmente, las Reglas no intentan definir, puesto que lo tiene ya a base de la doctrina jurisprudencial de existencia de causa probable. *Luego, el fiscal, naturalmente, no vendrá obligado a ofrecer toda su prueba ni cosa que se parezca. Ofrecerá prueba suficiente para que, a base de esa prueba, el magistrado pueda hacer determinación afirmativa de causa probable.* (Énfasis suplido.) *Memoria de la Primera Sesión Plenaria de la Conferencia Judicial de Puerto Rico*, 1958, pág. 144.

La ausencia de detalles en su redacción ha dado margen a múltiples requerimientos forenses e interrogantes judiciales. Muchas han sido resueltas jurisprudencialmente. Esa casuística nos ha permitido pronunciarnos sobre su función básica, a saber, limitada a la determinación de existencia o no de causa probable para creer que se ha cometido un delito y que el mismo ha sido cometido por el acusado. También tiende a evitar que se someta a un ciudadano arbitraria e injustificadamente a los rigores de un proceso criminal. *Pueblo* v. *Opio Opio*, 104 D.P.R. 167, 171 (1975); *Pueblo* v. *López Camacho*, 98 D.P.R. 700, 702 (1970); *Pueblo* v. *Figueroa Castro*, 102 D.P.R. 279, 284 (1974).

En el descargo de esa encomienda, el Ministerio Fiscal debe presentar prueba que a juicio del magistrado establezca la comisión de un delito y la probabilidad de que el imputado lo cometió. "El propósito de la vista preliminar es tratar con probabilidades, tanto en lo referente a la comisión de un delito como en cuanto al autor de dicho delito. . . . [H]ay envuelta una doble situación de probabilidades: la de que determinado delito haya sido cometido y la de que determinada

persona lo haya cometido." N. Frattallone, *La Vista Preliminar*, 63 Rev. Der. Puertorriqueño 231, 234 (1977). No se trata de una adjudicación final. Su función no es establecer la culpabilidad o inocencia del acusado, sino averiguar si en efecto el Estado tiene adecuada justificación para continuar con un proceso judicial. En esta etapa, la prueba no tiene que evidenciar más allá de duda razonable la culpabilidad del acusado.

. [14-15] Corolario de esta visión, el Ministerio Fiscal no está en la obligación de presentar toda la evidencia que posea en contra del acusado. *Pueblo* v. *López Pumarejo*, 113 D.P.R. 349 (1982). Solamente aquella constitutiva del *quantum* necesario para establecer que existe causa probable sobre todos los elementos del delito y su conexión con el imputado. *Vázquez Rosado* v. *Tribunal Superior*, 100 D.P.R. 592 (1972). Por ende, aunque el peso de la prueba sobre causa probable incumbe al fiscal, ésta no tendrá que ser de tal manera convincente como para sostener una convicción. *Pueblo* v. *Figueroa Castro*, supra. Aun así, tiene que estar sostenida por prueba admisible, que establezca prima facie, un caso contra el imputado. *Martínez Cortés* v. *Tribunal Superior*, 98 D.P.R. 652 (1970).

■ Por la naturaleza de la vista preliminar, la evaluación del magistrado sobre la credibilidad de los testigos, está supeditada al *quantum* de la prueba requerida en esta etapa procesal. Si de la prueba presentada no surge la probabilidad de que se haya cometido el delito o de que el acusado probablemente lo cometió, será su deber exonerarlo y ordenar su libertad. *Pueblo* v. *Tribunal de Distrito*, 97 D.P.R. 241 (1969).

■ La determinación de causa probable goza, como todo dictamen judicial, de presunción legal de corrección. *Pueblo* v. *Tribunal Superior*, 104 D.P.R. 454, 459 (1975); *Rabell Martínez* v. *Tribunal Superior*, 101 D.P.R. 796, 798–799 (1973). Finalmente hemos resuelto que aunque el magis-

trado haya determinado la existencia de causa probable para acusar, el fiscal no está obligado a presentar la acusación correspondiente de así creerlo adecuado. Regla 24 de Procedimiento Criminal; *Pueblo* v. *Quiñones Natal,* 94 D.P.R. 582, 584 (1967).

■ En resumen, nuestra jurisprudencia ha establecido que: (1) el objeto central de la vista preliminar no es hacer una adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado; (2) aunque se trata de una función propiamente judicial, no es "un mini juicio"; (3) el fiscal no tiene que presentar toda la prueba que posea; (4) la vista está encaminada a proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario, y (5) una vez se demuestra y se justifica esta intervención, la vista ha cumplido su propósito de ley.(³) Desde su concepción original la única modificación que experimentó fue la adoptada mediante Resolución de este foro el 24 de enero de 1967, que en virtud de la Sec. 6, Art. V de la Constitución —ante la inacción de la Asamblea Legislativa— dispuso que al ser requerido, el fiscal pondría a disposición del imputado las declaraciones juradas que tuviera en su poder de los testigos *sentados a declarar* en dicha vista.

■ Algunos estudios abogan porque a la misma se hagan extensivos los mecanismos de descubrimiento de prueba.(⁴)

---

(³)Además, es un mecanismo que sirve el propósito de impedir que acusaciones frívolas e insustanciales recarguen la labor del sistema de justicia, consumiendo el tiempo de los jueces, fiscales, jurados y demás funcionarios que han de intervenir en el juicio. *Hernández Ortega* v. *Tribunal Superior,* 102 D.P.R. 765 (1974). El carácter privado de la vista, salvo renuncia del imputado, tiende a minimizar el impacto negativo publicitario de quien finalmente es exonerado.

(⁴)La Comisión para el Estudio de la Fiscalía y Representación Legal del Estado del Consejo Sobre la Reforma de la Justicia en Puerto Rico, de 26 de septiembre de 1974, recomendó el que la defensa pueda obtener las

En ausencia de un planteamiento constitucional persuasivo de debido proceso de ley, (⁵) hemos resuelto que "en cuanto a los medios de descubrimiento de prueba sitúan al Pueblo en desventaja frente al acusado [o viceversa] y si conviene a una mejor administración de justicia penal que se equiparen es cuestión a ser determinada por las leyes y no mediante decisión judicial". *Pueblo* v. *Tribunal Superior*, 99 D.P.R. 104 (1970).

 Al presente los estudiosos identifican dos modelos o tipos generales para enmarcar la razón de ser de la vista preliminar: visión *retrospectiva* (*backward-looking*) y *prospectiva* (*forward-looking*).

Como este término sugiere, la preocupación primaria de la vista retrospectiva es con respecto a la legalidad del arresto y la validez de la detención. La pesquisa en la vista se manifiesta en la investigación hacia el pasado, al momento del arresto. Está diseñada para detectar detenciones ilegales de todas clases. Su interés se centra en una revisión de la legalidad de la detención. Se enfatiza el aspecto de la naturaleza preliminar no determinante ni final del procedimiento. El procedimiento no es un juicio sino un mecanismo inicial para cotejar la validez del arresto. El foro de la investigación se concentra mayormente en los hechos que dieron lugar al arresto, en contraste con la posible inocencia o culpabilidad del acusado desde el punto de vista jurídico.

---

declaraciones juradas de los testigos de cargo que aparecen en la denuncia en cualquier momento luego de determinarse la existencia de causa probable para el arresto. Págs. 133–135. Véase una recomendación similar en el *Informe del comité sobre normas y objetivos para acelerar el trámite de casos en el Tribunal de Primera Instancia.* Diciembre 1984, Vol. I.

(⁵) Así, en *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961), reconocimos el acceso a las declaraciones juradas de testigos, luego que declararan en juicio, como parte del derecho al contrainterrogatorio, y en *Pueblo* v. *Quiñones Ramos*, 99 D.P.R. 1 (1970), permitimos la entrega de las declaraciones juradas de testigos renunciados por el fiscal por resultar prueba acumulativa. Véase también *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962).

El modelo de visión *prospectiva* se orienta hacia el futuro: el juicio. El interés gira en cuanto a la probabilidad de culpabilidad o inocencia del acusado. Se destaca una preocupación por evitar o prevenir ulteriores procedimientos innecesarios. Por el papel central y más activo que juega el magistrado, se enfatiza su carácter más judicial, en contraste con el primer modelo señalado. Puede apreciar la credibilidad de testigos y debe estar dispuesto a desestimar los cargos de estimar insuficiente la prueba presentada por el Estado. Este último aspecto es fundamental en el modelo prospectivo.

 En Puerto Rico, según hemos visto, nuestra doctrina jurisprudencial reconoce que la vista preliminar tiene características de ambos modelos (ecléctica). Se aproxima tímidamente hacia la visión prospectiva. Bajo esta premisa, nuestra función adjudicativa no es irrestricta. Repetimos, excepto ante planteamientos constitucionales meritorios al amparo del debido proceso de ley, la reformulación, ampliación y orientación de la vista preliminar es cuestión que cae en el ámbito del poder de reglamentación (*rule making power*) de este foro conjuntamente con la Asamblea Legislativa. Sec. 6, Art. V de la Constitución.

 Hechas estas aclaraciones, notamos que la petición del imputado Rodríguez Aponte de reclamar para sí un derecho absoluto a presentar los testigos que el Ministerio Fiscal reservó para el juicio en su fondo, desnaturalizaría el propósito de la vista preliminar. Hemos visto cómo en dicha etapa el Estado no viene obligado a usarlos todos, como tampoco demostrar más allá de duda razonable la culpabilidad del imputado. La vista no es ni debe convertirse en un "mini juicio" o juicio preliminar; menos usarse como medio para prematura e incidentalmente extender más allá de lo permisible el descubrimiento de prueba oral (y declaraciones juradas) de los testigos de cargo. Para este fin el imputado tiene los mecanismos previstos en la Regla 95 de Procedimiento Criminal.

■ Por el carácter limitado de la vista preliminar, la prerrogativa del Ministerio Fiscal de no presentar en la misma toda la prueba que posea no activa la presunción que la Regla 16(5) de Evidencia contempla para el juicio. En consecuencia, no puede estimarse que tiene que poner a disposición de la defensa los testigos anunciados en la denuncia y no presentados en la referida vista.

■ Aun cuando es cuestión sujeta a debate académico, en nuestro ordenamiento subsiste el enfoque de que el sumario fiscal no está sujeto a un descubrimiento total y absoluto. El derecho que reconoce la Regla 23 de Procedimiento Criminal al imputado "a ofrecer prueba en su favor" en la vista preliminar no tiene ese alcance. No es irrestricto. Uno de los límites gira precisamente en torno a la accesibilidad a los testigos de cargo en esta etapa.

Al trazar estas coordenadas procesales, estamos conscientes de los riesgos que presentan las estrategias forenses susceptibles de ser desarrolladas por el Ministerio Fiscal o la defensa en torno al uso potencial de testigos. Teóricamente, la ruta podría ser bidireccional: testigos de *cargo* anunciados como de defensa o los de *defensa* como de cargo. Tal práctica, aunque reprobable, podría tener el deseado propósito de evitar que un adversario legítimamente pudiera presentarlos en la vista preliminar, o lograr incidentalmente descubrir prueba no accesible en esa etapa. La cuestión la hemos ponderado contra dos postulados recíprocos y fundamentales que inspiran el proceso judicial: la búsqueda de la verdad y que todo testigo es deudor de ese ideal, independientemente de la caracterización que en las distintas fases del fenómeno procesal se le atribuya.

■ La complejidad del dilema no debe dejar un vacío adjudicativo. Si bien rechazamos el automatismo procesal que sirve de base al planteamiento de la defensa, no debemos cerrar las puertas a situaciones meritorias y excepcionales. Son

remediables. Independientemente de que la defensa tiene el derecho a entrevistar los testigos de cargo según lo pautado en *Hoyos Gómez* v. *Tribunal Superior*, supra, —en contraste con la prohibición que recae sobre el Ministerio Fiscal, *Pueblo* v. *Tribunal Superior*, supra— resolvemos que en casos apropiados los magistrados en la vista preliminar están facultados discrecionalmente para atender cualquier reclamo genuino de un imputado, basado en que determinado testigo de cargo puede aportar evidencia que excluiría la determinación de causa probable. Ello es función inherentemente judicial. Ni la visión más limitada como tampoco la más abarcadora de vista preliminar es óbice para una determinación remedial si el Ministerio Público ha actuado con mala fe al anunciar como suyo un testigo que, a sabiendas, sólo podría beneficiar a la defensa.

Esta prerrogativa debe estar precedida de una ponderada reflexión según el contexto de cada caso. Su ejercicio está condicionado. A tal efecto, cuando en la vista preliminar un imputado reclame un testigo consignado al dorso de la denuncia como testigo de cargo, deberá hacer una demostración prima facie de que ese testigo puede aportar prueba exculpatoria que razonablemente y con toda probabilidad, derrotaría la estimación de causa probable para acusar. *Cf. Pueblo* v. *Cancel Hernández*, 111 D.P.R. 625 (1981). No basta una simple alegación. "[E]l acusado no tiene derecho a una expedición de pesca en los archivos de fiscalía." *Pueblo* v. *Romero Rodríguez*, 112 D.P.R. 437 (1982). Hecha esa demostración, corresponderá entonces al magistrado examinar en ausencia de las partes la declaración jurada de ese testigo. Más que simples contradicciones u omisiones no esenciales —cuestiones que corresponden propiamente al proceso de dirimir credibilidad en el juicio en su fondo— el examen versará sobre los elementos del delito y las probabilidades de que el imputado lo cometió. Si en efecto, con ese examen queda convencido de que el testigo de cargo podría aportar prueba que exonere

al imputado, por excepción, ordenará que preste testimonio. De no mediar esa circunstancia, el magistrado declarará sin lugar el pedido de la defensa de usar los testigos de cargo.

## III

En el caso de autos, el récord está huérfano en cuanto a demostración prima facie de que la presentación de cualesquiera de los testigos del Ministerio Fiscal podría producir prueba exculpatoria. La moción de la defensa no contiene elementos de juicio en qué apoyar el dictamen del Tribunal de Distrito. En estas circunstancias, *debemos revocarla y devolver el caso para que la defensa, sujeto al trámite aquí pautado, tenga la oportunidad de demostrar la procedencia de su solicitud.*

El Juez Asociado Señor Hernández Denton concurre en el resultado sin opinión.